**UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PRIMEPAY, LLC.<br>1487 Dunwoody Drive<br>West Chester, Pennsylvania 19380,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br><br>PETER J. CAPPIELLO<br>15 Chambers Drive<br>Baldwin Place, NY 10505, and<br><br><br><br>ABOVE AND BEYOND – BUSINESS<br>TOOLS AND SERVICES<br>FOR ENTREPRENEURS, INC.,<br>d/b/a GETBEYOND<br>902 Carnegie Center, Suite 160<br>Princeton, NJ  08540<br><br>　　　　　Defendants. | CIVIL ACTION NO. _____<br><br>Jury Trial Demanded<br><br>**COMPLAINT** |

Plaintiff PrimePay, LLC ("PrimePay" or "Plaintiff"), by and through its undersigned counsel, hereby brings the following Complaint against former employee Peter J. Cappiello ("Cappiello") and Above and Beyond – Business Tools and Services for Entrepreneurs, Inc. d/b/a GetBeyond ("Beyond") (collectively "Defendants") seeking injunctive relief and monetary damages.

- 1 -

## I.  PRELIMINARY STATEMENT

1.     PrimePay brings this action against Defendants seeking to bar their continued misappropriation of PrimePay's trade secrets and confidential and proprietary business information, engaging in unfair competition, and to stop Cappiello from continuing to violate his post-employment contractual obligations to PrimePay.

2.     This case is about: (a) protecting PrimePay's stolen trade secrets and other confidential and proprietary information and, and (b) insuring that Cappiello, a former officer of PrimePay, abides by his post-employment contractual obligations.

## II.  BRIEF FACTUAL BACKGROUND

3.     As former Senior Vice President, Sales, Defendant Cappiello was employed by PrimePay in a position of trust and confidence, and as such had access to a wide variety of PrimePay's most highly sensitive, confidential and proprietary client and business information.

4.     Cappiello was a highly compensated employee, in excess of six (6) figures, and was eligible for significant annual incentive plan bonuses.  Throughout his employment with PrimePay, Cappiello executed agreements making clear his obligations with respect to PrimePay's confidential and proprietary information.

5.     Specifically, Cappiello executed a VP Level Employee Non-Disclosure and Intellectual Property Agreement on August 13, 2015 (the "NDA").  Cappiello additionally executed a Second Amended and Restated Limited Liability Company Agreement for Class C Members of PrimePay, LLC on October 16, 2017 (the "LLC Agreement").

6.     Cappiello's primary responsibility at PrimePay was to develop, market and sell payroll services and solutions.

7.      On or around November 8, 2019, Cappiello's employment with PrimePay terminated.

8.      In conjunction with his termination of employment and consistent with PrimePay's procedures to protect its confidential and proprietary information, Cappiello executed a Security Termination Agreement on November 8, 2019 (the "Termination Agreement").  In doing so Cappiello represented that:

> in connection with the privileges extended to me by [PrimePay] with regard to access to proprietary information;
>
> 1.)      I do not now have in my possession or custody or control any document, Software or other thing containing or incorporating [PrimePay] proprietary information to which I obtained access during my control.
>
> 2.)      I am not retaining or taking away with me from [PrimePay] any document containing or incorporating [PrimePay] proprietary information to which I obtained access during my employment in any manner whatsoever.
>
> 3.)      I shall not hereafter in any manner reveal or divulge to any person any proprietary information of which I have gained knowledge during my employment, except as may be hereunder authorized by [PrimePay].
>
> 4.)      I understand and acknowledge that this statement in no way diminishes my responsibilities and obligations under [PrimePay] Non-Disclosure Agreements executed by me.

Cappiello represented that "[e]ach of the above statements is true to the best of my knowledge and belief."  *See* Ex. A (Termination Agreement).

9.      On or around November 11, 2019, Cappiello began working for Beyond as the Vice President of Business Tools.

10.      PrimePay expressed concern about Cappiello's hiring by Beyond at that time, and Cappiello represented to PrimePay that he would not be engaged in performing payroll services,

or other conduct that violated his contractual obligations to PrimePay.  *See* Ex. B (Cappiello E-mail dated Feb. 21, 2020).

11.     Upon information and belief, Beyond actually hired Cappiello to develop a payroll processing business, and to create a payroll processing solution that directly competes with PrimePay.

12.     Throughout the end of 2019 and beginning of 2020, PrimePay sought and obtained representations from both Cappiello and Beyond that his role at Beyond was not a violation of his contractual obligations to PrimePay.  During the same time period, PrimePay also sought to confirm Cappiello's prior representations that he did not have any PrimePay confidential information in his possession.  In each and every instance, Cappiello and Beyond represented that Cappiello was not performing payroll services for Beyond.

13.     In March 2020, PrimePay learned *for the first time* that prior to Cappiello's departure from PrimePay, he downloaded PrimePay files containing confidential and proprietary information and trade secrets (the "Stolen Proprietary Information") onto his personal hard drive (the "Hard Drive").  PrimePay later discovered that the Stolen Proprietary Information stored on the Hard Drive contained over twenty thousand (20,000) PrimePay documents.

14.     PrimePay obtained the Hard Drive and learned through a preliminary forensic investigation (in May 2020) that not only did Cappiello have the Stolen Proprietary Information in his possession, but he continued to access it after he left PrimePay (and while he was employed with Beyond).  The documents Cappiello accessed included proprietary sales data, client presentations, and compensation plans (the "Accessed Documents").

15.     The Accessed Documents were all stored on PrimePay's computer systems which are password protected and subject to PrimePay's policies concerning confidential information and trade secrets.

16.     Cappiello accessed the Stolen Proprietary Information on the Hard Drive as recently as January 6, 2020.  At that point, Cappiello had been an employee of Beyond for roughly two (2) months.

17.     Cappiello's illicit conduct did not stop there.  He later admitted to placing portions of the Stolen Proprietary Information on Beyond's internal computer system (the "Uploaded Documents").  Cappiello also admitted to using the Uploaded Documents to create work product for Beyond.

18.     In July 2020, after discovering that Cappiello had placed the Uploaded Documents on Beyond's servers, PrimePay insisted that Beyond provide copies of all such documents.  Beyond turned over the Uploaded Documents just a few weeks ago, on August 7, 2020.

19.     The Uploaded Documents all relate to payroll processing services.  Upon reviewing these documents, PrimePay was convinced that they were being used by Cappiello and Beyond to expand a competitive business unit focused on payroll processing.  This conduct is a clear violation of Cappiello's post-employment contractual obligations to PrimePay.

20.     Cappiello has also admitted that he may have uploaded Stolen Proprietary Information to two (2) flash drives and his personal laptop (the "Additional Devices").  PrimePay demanded that the Additional Devices be turned over to a third party forensic investigator.  However, to date Defendants have failed to provide the Additional Devices for inspection.

21.     Cappiello admittedly possesses the Stolen Proprietary Information, and accessed such information months after his termination by PrimePay.  Cappiello also admits to placing the Uploaded Documents on Beyond's servers.  Court intervention is necessary to prevent Defendants from further misappropriating PrimePay's trade secrets to unfairly compete with PrimePay, and to halt Cappiello's blatant breaches of his post-employment contractual obligations to PrimePay.

### III.     <u>JURISDICTION AND VENUE</u>

22.     This Court maintains subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because PrimePay asserts a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (the "DTSA") which is a law of the United States.  This Court also maintain subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as PrimePay and the Defendants are citizens of different U.S. States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

23.     This Court has supplemental jurisdiction over PrimePay's pendent state law claims under 28 U.S.C. § 1367.  These pendent state law claims derive from a common nucleus of operative facts and are so related to the federal law claims that they form part of the same case or controversy.

24.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3) because a substantial part of the events or omissions giving rise to PrimePay's claims occurred in this District, and because Defendants regularly conduct business in this District, and are subject to personal jurisdiction here.

IV.   **THE PARTIES**

25.     Plaintiff PrimePay is a Delaware Limited Liability Company with its principal place of business located at 1487 Dunwoody Drive, West Chester, Pennsylvania 19380.

26.     Upon information and belief, Defendant Cappiello is a citizen of the State of New York residing at 15 Chambers Drive, Baldwin Place, NY 10505.

27.     Cappiello performed work for PrimePay in the Commonwealth of Pennsylvania and entered into agreements with PrimePay with the knowledge that PrimePay is a Pennsylvania entity.

28.     Cappiello had continuous and systematic contacts with the Commonwealth of Pennsylvania during the time relevant to this Complaint.

29.     Upon information and belief, Defendant Beyond is a Delaware Corporation with its principal place of business located at 902 Carnegie Center Princeton, Suite 160, NJ 08540.

30.     Upon information and belief, Defendant Beyond has continuous and systematic contacts with the Commonwealth of Pennsylvania.

31.     PrimePay's claims in this case arise from actions Defendants Cappiello and Beyond took that were directed at PrimePay, a Pennsylvania entity, and caused injury to PrimePay in the Commonwealth of Pennsylvania.

V.   **DETAILED FACTUAL BACKGROUND**

a.  **PrimePay's Business**

32.     PrimePay provides payroll and human resources services to business owners nationwide.  PrimePay offers tools and services for businesses of all sizes.  The variety of tools and services offered by PrimePay allows businesses to manage their employees throughout the

entire 'hire to retire' process.  This includes recruiting, onboarding, payroll and benefits, as well as 401(k) administration.

33.     PrimePay's payroll service features include, among other things, online processing with two (2) factor authentication for strong security, and multiple payroll delivery options, including direct deposit and/or payment via paycards.

34.     PrimePay also makes available to its payroll clients unlimited online reports, including: payroll and timesheet journals; tax, departmental, and monthly summaries; deduction, 401(k), FICA tip credit, labor distribution, shortfall, and time accrual reports; workers' compensation insurance recaps; and bank reconciliation with hard copy and electronic import options.

35.     PrimePay also provides its payroll clients with access to its Payroll Documents & Exports system, which includes: custom reporting options; online report and tax report views; online pay statements and Forms W-2; and advisor access for clients' professional service provides such as Certified Public Accountants ("CPAs") and benefits brokers.

36.     PrimePay's payroll clients receive an employee online access system that allows employees to view pay statements 24/7 for past and current earnings; view, download, and save their information; receive automated emails when a pay stub is available to view; reduce the risk of identity theft thanks to PrimePay's strong online security practices; and access Forms 1099 and W-2.

37.     PrimePay provides its payroll clients additional services including general ledgers; online new hire reporting; a U.S.-based support team; garnishment payment services for child support; check signing, stuffing, and sealing; free backup and recovery of client information, as well as detection and monitoring services to prevent viruses, malware, and

hackers; the highest level of security across all U.S. processing centers using methods including digital certificates, encryption, and mandated passwords; and a full scale security team to constantly manage data integrity and protection.

38.     In providing the payroll services outlined above, PrimePay has invested a substantial amount of time and effort into developing confidential and proprietary business information and strategies, including but not limited to client lists, pricing strategies, pricing proposals, pricing assumptions, productivity assumptions, profit margins, vendor pricing information, actual costs, form contracts, sales strategies, business plans and market forecasts (the "Trade Secrets").  The Trade Secrets have been, and continue to be, valuable assets of PrimePay that give it a distinct advantage over its competitors.

39.     The Trade Secrets were and are used in interstate commerce as PrimePay has clients and operations throughout the United States.

40.     The Stolen Proprietary Information included PrimePay's Trade Secrets.

   **b.  PrimePay's Confidentiality Policies**

41.     In the highly competitive industry in which PrimePay operates, keeping confidential and trade secret information (collectively, "Confidential Information") protected is critical to maintaining a competitive position.

42.     PrimePay takes a number of steps to protect Confidential Information, including: (1) requiring employees with access to execute non-compete, non-solicitation, and confidentiality restrictive covenants; (2) maintaining policies that forbid employees from disseminating such information, and publicizing those policies to all employees through an employee handbook; and (3) implementing electronic security measures such as use of

passwords, security timeouts on computers and cellular phones, and segregation of Confidential Information to separate servers and/or server locations.

43.     Cappiello executed various documents acknowledging and agreeing to abide by PrimePay's confidentiality requirements, including but not limited to the LLC Agreement and the NDA.

44.     Cappiello was granted access to PrimePay's computer and communications systems and was required to abide by all PrimePay's policies governing the use of such systems, which include prohibitions regarding the use of PrimePay's computer and communications systems for any purpose that conflicts with the furtherance of PrimePay's business.

### c.  Defendant Cappiello's Employment with PrimePay

45.     On or about June 11, 2007, PrimePay hired Cappiello as an Account Executive. On or around May 1, 2016, Cappiello was promoted to Senior Vice President, Sales ("SVP").  In that role, Cappiello led the planning and execution of all sales activities nationally, and focused specifically on the Greater New York market.

46.     A part of Cappiello's duties as SVP included managing a team of sales managers for payroll services.

47.     Cappiello was the primary contact for numerous PrimePay employees, clients, and vendors for payroll services.  PrimePay trusted Cappiello to call on (and frequently meet in-person) with clients, prospective clients, vendors, and employees.

48.     Cappiello was primarily responsible for generating new business, ensuring profitability, and supervising the sales and operations team members in PrimePay's Enterprise Sales Team.  The Enterprise Sales Team focuses on securing payroll services clients with greater than one hundred (100) employees.

49.     Cappiello earned hundreds of thousands of dollars in base compensation, and was eligible for (and received) annual incentive plan bonuses.

50.     Throughout his employment, Cappiello was required to execute documents acknowledging that he would be exposed to highly confidential and proprietary information, including the Trade Secrets.  Through these agreements, Cappiello agreed not to use, disclose or engage in misappropriation of such information.

        (i)     *Cappiello Executes The NDA*

51.     On August 13, 2015, Cappiello executed the NDA.  *See* Ex. C (VP Level Employee Non-Disclosure and Intellectual Property Agreement).  The NDA defined "Confidential Information" and contained express provisions regarding how such information was to be treated.  Specifically, the NDA defined "Confidential Information" to include:

- Financial and business information, such as information with respect to costs, commissions, fees, profits, sales, sales margins, capital structure, operating results, borrowing arrangements, strategies and plans for future business, pending projects and proposals, and potential acquisitions or divestitures;
- Product, system and technical information, such as product formulations, new and innovative product ideas, research and development projects . . . .
- Marketing information, such as new marketing ideas, markets, a mailing lists, marketing channels and referral sources, the identity of the Company's clients, their names and addresses, the name of representatives of the Company's clients responsible for entering into the contracts with the Company, the financial arrangements between the Company and such clients, specific client needs and requirements, and leads and referrals to prospective clients;
- all client financial, tax, banking and similar information specific to that client . ..
- personnel information, such as  . . . salaries, bonusses, benefits, skills, qualifications and abilities; . . . .

52.     In the NDA, Cappiello also agreed to protect PrimePay's "Confidential Information" and "Trade Secrets," and return all such information at the end of his employment:

- PrimePay's business operations, client identities, methods, procedures, and systems are simply no one else's business, period. [T]hat during the course of employment with PrimePay, Cappiello ha[d] and [would] come in contact with and learn various forms of

Confidential Information and Trade Secrets, which are property of
PrimePay. This information relates to PrimePay, its business,
systems, technology, products, clients, vendors and other business
partners, and employees.

- [U]pon termination of employment . . . [Cappiello would] turn over
  to PrimePay all Confidential Information in the form of documents,
  disks or other computer media, correspondence (including e-mails),
  files, notes, memoranda, training manuals, handbooks, database,
  computer files or other materials in [his] possession or under [his]
  control that may contain or be derived from ideas, concepts,
  Inventions, or trade secrets and other Confidential Information as
  set forth in this [NDA], or that are connected with or derived from
  [his] services to or employment with PrimePay or that otherwise
  relate to PrimePay's business.

- [T]o return, intact, all such PrimePay equipment and materials as
  described above, including all data and software (including e-mails,
  contact information and electronic documents or materials) on [his]
  [PrimePay] computer or other [PrimePay]-owned device or media
  in [his] possession or under [his] control upon termination of [his]
  employment; any lists of [PrimePay's] clients or leads or referrals
  to prospective clients[.] Additionally, [he] agree[d] to cooperate
  with PrimePay in permanently deleting all Confidential Information
  which may be stored or contained on [his] personal computer,
  smartphone or similar device, external storage device, and/or cloud
  based storage provider.

53.     Cappiello additionally agreed to respective twelve (12) month non-compete and

non-solicitation restrictions in the NDA:

- [T]hat for the twelve month period following the date that
  [Cappiello's] employment with PrimePay ends, Cappiello . . . will
  not, directly or indirectly, hire or solicit for employment any
  PrimePay employee or encourage any PrimePay employee to leave
  PrimePay's employ. [Cappiello] also agree[d] not to hire any former
  PrimePay employee within one year after the date such person's
  employment with PrimePay ended.

- [T]hat so long as [he was] employed by [PrimePay] and for a period
  of twelve [12] months after such employment ends, whether
  voluntarily or involuntarily, [he] will not, without the express
  written consent of the Chief Executive Officer of PrimePay, directly
  or indirectly . . . be employed in a capacity similar to the position(s)
  [he] held at PrimePay, by any company or entity for which [he] will

- 12 -

be engaged in the same segment(s) of such business that competes with the segment of PrimePay's business for which [he] had responsibility or about which [he] had knowledge of or access to Confidential Information and Trade Secrets while employed by PrimePay. . . .

- [T]hat for a period of twelve [12] months after [his] employment with PrimePay ends, whether voluntarily or involuntarily, [he] will not directly or indirectly service or solicit clients or prospective clients of PrimePay for the purpose of selling products and services of the type for which [he] had responsibility or knowledge of or access to Confidential Information while employed at PrimePay. . .

54. The NDA provided that Cappiello's "obligations under [the] Agreement shall be independent of, and unaffected by, and shall not affect, other agreements . . . which apply to [Cappiello's] business activities during and/or subsequent to [his] employment by PrimePay[.]" *See* Ex. C, § 12(g).

55. The NDA specified that Pennsylvania Law shall govern it, and that any dispute arising from it should be brought exclusively in either this Court or in the Court of Common Pleas of Chester County, Pennsylvania. *See* Ex. C, § 12(a).

(ii)     *Cappiello Executes The LLC Agreement*

56. On or around October 16, 2017, after years of service, Cappiello became a 'Member' of PrimePay and executed the LLC Agreement[1]. As part of the LLC Agreement, Cappiello received Class C Units in PrimePay. These units provided an equity interest in PrimePay and were a measure of PrimePay's trust in Cappiello. The LLC Agreement contained various provisions and restrictive covenants regarding confidentiality.

57. In the LLC Agreement, Cappiello agreed to a two (2) year non-competition obligation:

---

[1] Plaintiff has not attached a copy of the LLC Agreement to the Complaint as an Exhibit because its terms mandate that it be kept confidential.

- 13 -

- [Cappiello] shall not, directly or indirectly, individually or as an employee, owner, partner, investor, member, director, officer, stockholder, or otherwise, in any geographical area where [PrimePay] is engaged in business or plans to engage in business (as evidenced by [PrimePay] records), participate in, engage in, or associate with any business enterprise that provides the same or comparable products or services that [PrimePay] provides, to a clientele that is comparable to [PrimePay's] clientele, without consent of the Chief Executive Officer.

- [Cappiello] shall not, directly or indirectly, individually or as an employee, owner, partner, investor, member, director, officer, stockholder, or otherwise, solicit or induce any Employee to work for any business which competes with [PrimePay's] business or hire or engage any Employee to work for any business which competes with [PrimePay's] business.

- [Cappiello] shall not, directly or indirectly, individually or as an employee, owner, partner, investor, member, director, officer, stockholder, or otherwise, solicit from any Client the opportunity to perform for the Client services of the type performed by [PrimePay] or perform for any Client any services of that type or interfere with or seek to interfere with [PrimePay's] relations with any Client or any person identified [in the previous two paragraphs].

58. The LLC Agreement included specific provisions regarding Cappiello's duty to protect company property and confidential information. The LLC Agreement defined "Confidential Information" to include:

(i) information concerning Company clients ("Clients"), including without limitation, all records, Client lists, names of Client contacts, client financial information, client personnel information, client needs, and other information relating to Clients; (ii) the Company's referral sources; (iii) all policy and procedure manuals, and advertising and training concepts, formats and programs, together with all documents and other tangible materials embodying or illustrating any of the foregoing; (iv) all information concerning the Company's billing practices and procedures; (v) the rates and amounts that the Company pays to it personnel, including independent contractors; (vi) all formulae, patterns, compilations, programs, plans, ideas, concepts, object codes, source codes, devices, lists, databases, checklists, methods, techniques, procedures, and processes of the Company (vii) the Company's sources of supply; (viii) all other information concerning the Clients or prospective Clients which is disclosed by the Company to the member or is discovered by the Member in the course of the member's employment, including information which is confidential information of the Client

- 14 -

or is treated by the Client as confidential; (ix) the terms of this Agreement and (x) any other information relating the business of the Company which is disclosed by the Company to the member or is discovery by the member in the course of the member's membership in or employment with the Company.

59.     The LLC Agreement also prohibited Cappiello from disclosing or using PrimePay's "Confidential Information":

> During and after the period of a Member's membership in and employment with the Company, [Cappiello] shall maintain secrecy and confidentiality of the Confidential Information and shall not (i) divulge, furnish or make accessible to anyone or in any way use, for [his] own benefit or for the benefit of any other individual, firm or entity . . . any Confidential Information; or (ii) take or permit any action to be taken which would reduce the values of the Confidential Information to the Company.

60.     The LLC Agreement contained a choice of law provision specifying that Delaware Law shall govern the Agreement.

**d.  Cappiello's Access to PrimePay's Confidential and Proprietary Information**

61.     In his role as SVP, Cappiello was a key employee and had high-level knowledge of PrimePay's business, strategic and tactical plans, processes, branding, product and marketing strategies and tactics across many product and service lines in all geographical areas served by PrimePay.  This information and knowledge included access to PrimePay's Trade Secrets.

62.     Cappiello was responsible for building the Enterprise Sales Team within PrimePay.  Cappiello was responsible for creating marketing tools, pricing models and actively soliciting new business on behalf of PrimePay.

63.     Cappiello had access to all client information, documents and systems maintained by PrimePay in order to create and build materials to support the Enterprise Sales Team.  In this role, Cappiello created client proposals with cost summaries, pricing models, financial spreadsheets and visuals.  All of the information Cappiello used to create these proposals was

cultivated and maintained by PrimePay.  At least some of the information Cappiello used to create these proposals comprised PrimePay's Trade Secrets.

64.    In his position as SVP, Cappiello had substantial knowledge of specific PrimePay 'White Label' agreements, under which PrimePay provides additional services (beyond payroll processing) to clients and customers.  PrimePay was one the first entities in the industry to 'white label' a specific onboarding platform, and Cappiello had intimate knowledge of that arrangement, and the competitive advantage the arrangement provided to PrimePay in the marketplace.

65.    PrimePay's Trade Secrets, including client proposals and client data, give PrimePay a competitive edge in the payroll services market.  A loss of this information to a competitor would inflict significant harm to PrimePay that cannot be measured in monetary damages alone.

66.    Upon information and belief, Cappiello is using or intends to use the information he gained through his employment at PrimePay to assist Beyond in starting an organic payroll services business to directly compete with PrimePay.

### e.  Beyond's Prior Meetings With Cappiello And PrimePay

67.    Upon information and belief, Cappiello's transition to Beyond was not random at all, but a calculated attempt by Beyond to set up a competing payroll service.

68.    PrimePay's Chief Executive Officer, William J. Pellicano ("Pellicano"), spoke with Robert O. Carr on December 18, 2014, and met with him on April 21, 2015.  At the time, Carr was the Founder and Chief Executive Officer of Heartland Payment Systems ("Heartland"), a Fortune 1000 debit- and credit-card transaction company.  Carr went on to sell Heartland to Global Payments for over $4.3 billion in 2016.

69.     After selling Heartland, Carr founded Beyond.

70.     On or about August 29, 2017, Pellicano and Carr met again, to discuss a business relationship between PrimePay and Beyond.

71.     PrimePay thereafter gave a presentation to Beyond on September 1, 2017, which Cappiello attended.

72.     Upon information and belief, Beyond thereafter engaged ExecuPay, Inc. (a PrimePay competitor) to perform third-party payroll processing services.

73.     Upon information and belief, Beyond desires an internal payroll processing system and solution, and sought to hire Cappiello to lead a team in developing that solution.

### f.   Cappiello's Resignation

74.     On or around October 25, 2019, Cappiello provided PrimePay verbal notice of his resignation.  Cappiello's last day of employment with PrimePay was November 8, 2019.

75.     On November 8, 2019, Todd Quarfot, Executive Vice President for PrimePay, met Cappiello in person at PrimePay's Westchester, New York office to receive Cappiello's PrimePay laptop and present Cappiello with various termination documents, including the Termination Agreement.  *See* Ex. A.

76.     On Friday, November 8, 2019, Cappiello's PrimePay computer system and e-mail access were terminated.

77.     On information and belief, Cappiello's employment with Beyond commenced on the next business day, Monday, November 11, 2019.

78.     Since his departure from PrimePay, Cappiello has made continuous misrepresentations to PrimePay regarding his access and use of PrimePay information, as well as his job responsibilities and duties at Beyond.

- 17 -

79.     Cappiello has provided an ever changing litany of excuses and explanations each time PrimePay has confronted him with evidence demonstrating that he intentionally stole PrimePay Trade Secrets and other Confidential Information, and continued to use that information while employed at Beyond.

### g.  Cappiello's Employment with Beyond

80.     PrimePay learned that Cappiello began employment with Beyond on or around November 11, 2019.  PrimePay contacted Cappiello to confirm the nature of Beyond's business, and to ascertain whether Cappiello's employment with Beyond violated his post-employment contractual obligations to PrimePay.

81.     At that time, Cappiello assured PrimePay that he was not working for a competitor.  He also represented to PrimePay that he did not have any PrimePay information in his possession.  *See* Ex. B.

82.     PrimePay, concerned about the work Cappiello was conducting at Beyond, asked for more specific information on his job responsibilities in order to ensure that he was not in breach of his post-employment contractual obligations.

83.     Cappiello refused to provide additional information about his position with Beyond and stated that if PrimePay "wish[ed] to receive any more information, it will need to happen in the courtroom."  *See* Ex. B.

84.     On February 27, 2020 PrimePay, through counsel, sent separate letters to Cappiello and to Beyond, seeking assurance that Cappiello was not in breach of his contractual obligations by virtue of his employment with Beyond.  *See* Ex. D (Letters to Cappiello & Beyond).

85.     By letter dated March 12, 2020, Beyond assured PrimePay that Cappiello was not working in payroll services:

> It may be helpful to provide some information about Beyond's business and to contrast PrimePay's business. [Beyond] understand[s] that PrimePay is a payroll solutions business and that the vast majority of its revenues are from payroll services and the very small percentage of its remaining revenues come from sales of services that complement payroll. Mr. Cappiello spent virtually all of his time at PrimePay on sales of payroll services. [We] a[re] told that PrimePay does not have an effective credit card processing business. Mr. Cappiello says that in his twelve years at PrimePay, he never sold a single credit card processing account. Beyond, on the other hand, is a credit card processing company. **The vast majority of its sales are from credit card process services and less than [sic] 5% are from payroll services.**
>
> Mr. Cappiello is a Sales Vice President for Beyond. He is responsible for sales in the New England region, encompassing New York, Connecticut, Massachusetts, Vermont, New Hampshire, Rhode Island, and Maine. He is not permitted to directly sell to customers or prospective customers. Rather, he leads five division directors, who are also not permitted to make sales.
>
> *     *     *
>
> It is also important to note that Mr. Cappiello has not had any contact with any PrimePay customer. In fact, Mr. Cappiello is not aware that any of the sales people in his region has encountered a PrimePay customer. That is not surprising because Beyond sells such a small amount of payroll services, and PrimePay customers represent a fairly small percentage of the overall payroll services market.

*See* Ex. E (March 12, 2020 Letter from Beyond) (emphasis added).

86.     In that same March 12th letter, Beyond informed PrimePay that Cappiello had "backed up" his PrimePay laptop to his Hard Drive, but that he had "not accessed any PrimePay data on that hard drive since he left PrimePay and does not intend to do so." Ex. E, p. 2.

87.     Cappiello was also "adamant that he has not used or disclosed any PrimePay confidential information in his employment at Beyond and d[id] not intend to do so."  Ex. E, p. 2.

88.     By letter dated March 19, 2020, PrimePay demanded that Cappiello submit his Hard Drive to a third party forensic investigator.  PrimePay also demanded that Cappiello provide a listing of all other personal devises, including cloud based storage accounts, on which he accessed any PrimePay information.  *See* Ex. F (March 19, 2020 Letter from PrimePay).

89.     PrimePay's forensic investigator did not actually receive the Hard Drive until April 30, 2020, some six (6) weeks later.

90.     An initial forensic analysis of the Hard Drive was performed at the expense of PrimePay.  PrimePay discovered that: (a) Cappiello saved and accessed a significant amount of PrimePay's confidential information in the later part of October 2019; (2) Cappiello accessed PrimePay information throughout November 2019, December 2019 and January 2020 while employed at Beyond; and (3) Cappiello had other external sources on which he kept (or is continuing to keep) PrimePay Information, including the Additional Devices (Cappiello's two (2) flash drives and his personal laptop).

91.     Based on the forensic analysis of the Hard Drive, PrimePay knows that Cappiello accessed the following types of PrimePay information: personnel files; sales information; proprietary presentations regarding strategy and business plans; competitive business intelligence; internal sales data; client proposals with specific pricing information; client prospect information; pipeline reports; client service agreements; and commission payments.

92.     On June 5, 2020, PrimePay notified counsel that Cappiello's representations regarding the Hard Drive were false and identified the type of documents that Cappiello had

accessed.  *See* Ex. G (June 5, 2020 E-mail from PrimePay's counsel).  PrimePay again demanded that Cappiello turn over any additional external devices with PrimePay information.  PrimePay also included a document preservation notice.

93.     On July 9, 2020, after being caught in multiple lies, Cappiello's counsel finally acknowledged that Cappiello had saved PrimePay Confidential Information to the Additional Devices, as well to Beyond's internal computer system.  *See* Ex. H (July 9, 2020 E-mail from Cappiello/Beyond's counsel).

94.     Since then, PrimePay has attempted to gain access to the Additional Devices, to have all Confidential Information and Trade Secrets removed from Beyond's computer system, and to determine if Cappiello's job responsibilities at Beyond conflict with his contractual obligations to PrimePay.

95.     On August 27, 2020, PrimePay's counsel sent an e-mail to counsel for the Defendants in hopes of resolving this dispute without litigation, and provided the Defendants until September 4, 2020 to resolve all issues.  *See* Ex. I (August 27, 2020 E-mail from PrimePay's counsel).  The Defendants failed to resolve these outstanding issues, and this litigation became necessary.

## h.  The Uploaded Documents

96.     At some point after his departure from PrimePay, Cappiello placed several documents containing PrimePay's Trade Secrets  (the Uploaded Documents) on the internal computer system of Beyond.

97.     PrimePay has not attached copies of the Uploaded Documents here due to the fact that they comprise PrimePay's Trade Secrets.  However, all of the Uploaded Documents relate to the provision of payroll processing services.

98.     The Uploaded Documents included: (a) PowerPoint® presentations related to PrimePay's Enterprise Sales business strategies and pricing, (b) Excel® spreadsheets containing PrimePay's proprietary pricing information and client contact details.

99.     The Uploaded Documents also included a version of one of the PrimePay PowerPoint® presentations where to the PrimePay logo was removed and replaced with the Beyond logo.

100.    The only reason that Cappiello would be utilizing the Uploaded Documents would be to create payroll processing materials for Beyond, a first step towards Beyond directly competing with PrimePay in this space.

   **i.   Defendants' Actions Are Causing Irreparable Harm To PrimePay**

101.    Cappiello is unlawfully in possession of PrimePay's Confidential Information and Trade Secrets.

102.    Cappiello has admitted to downloading the Stolen Proprietary Information onto his Hard Drive.

103.    Cappiello has admitted to viewing the Accessed Documents (which are a portion of the Stolen Proprietary Information) after his employment ended on November 9, 2019.

104.    Cappiello has admitted to placing the Uploaded Documents (also a portion of the Stolen Proprietary Information) on Beyond's internal computer system.

105.    Upon information and belief, Beyond has tasked Cappiello with launching and managing a suite of payroll services and products that will directly compete with the services and products that Cappiello managed at PrimePay.

106.    With the Stolen Proprietary Information, the Accessed Documents and the

Uploaded Documents at his fingertips, Cappiello has provided Beyond a significant advantage

towards creating a payroll processing service that other competitors would not otherwise possess.

107.    The purpose of the NDA and the LLC Agreement that Cappiello signed were to

ensure that Cappiello would not present a significant business risk to PrimePay after his

employment had ended.

108.    In order to protect its interests, PrimePay initiated this action to prevent it from

suffering from additional irreparable harm through Defendants' conduct.

**COUNT I**
**DEFEND TRADE SECRETS ACT**
**(Against All Defendants)**

109.    The facts alleged in the preceding Paragraphs 1-108 are incorporated herein as if

set forth in full.

110.    Defendants have violated the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), by

misappropriating trade secrets used in, or intended for use in, interstate or foreign commerce.

111.    The DTSA defines trade secrets as: "all forms and types of financial, business,

scientific, technical, economic, or engineering information, including patterns, plans,

compilations, program devices, formulas, designs, prototypes, methods, techniques, processes,

procedures, programs, or codes, whether tangible or intangible, and whether or how stored,

compiled, or memorialized physically, electronically, graphically, photographically, or in writ. if

(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the

information derives independent economic value, actual or potential, from not being generally

known to, and not being readily ascertainable through proper means by, another person who can

obtain economic value from the disclosure or use of the information."

112.    PrimePay possesses Trade Secrets (as defined above), each of which is sufficiently secret to derive economic value from not being generally known to persons who can obtain economic value from the disclosure or use of the information.  This sensitive information was created and maintained through countless hours of direct client interactions and/or other work and would be otherwise unavailable to Defendants.  The information is not known or available to the public, nor could the information be "reverse engineered" through public sources.

113.    The Trade Secrets concern PrimePay's payroll services and products.

114.    Defendants misappropriated the Trade Secrets when Defendant Cappiello stole this information while still working for PrimePay, and while also working to set up a competitive payroll services and products business unit for Defendant Beyond.

115.    As a direct result of Defendants' misappropriation of PrimePay's Trade Secrets, PrimePay has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law, and PrimePay has suffered and continues to suffer significant damages that will be proven at trial

116.    The DTSA specifically authorizes courts to award injunctive relief to prevent the actual or threatened misappropriation of trade secrets.

## COUNT II
## BREACH OF CONTRACT (NON-COMPETE RESTRICTIONS)
### (Against Defendant Cappiello)

117.    The facts alleged in the preceding Paragraphs 1-116 are incorporated herein as if set forth in full.

118.    The NDA prohibits Cappiello from being employed in a capacity similar to the position he held at PrimePay, by any company for which he will be engaged in the same segment(s) of business that compete with the segment of PrimePay's business for which he had responsibility or about which he had knowledge of or access to Confidential Information and Trade Secrets while employed by PrimePay.  This provision of the NDA remains in effect for twelve (12) months from the date of Cappiello's termination of employment, or until at least November 8, 2020.

119.    The LLC Agreement prohibits Cappiello from engaging in any business that provides the same or comparable products or services that PrimePay provides, to a clientele that is comparable to PrimePay's clientele for a period of twenty-four (24) months from the date of Cappiello's termination of employment, or until at least November 8, 2021.

120.    Upon information and belief, Beyond recruited Cappiello for the express purpose of having him lead and grow its payroll services business.

121.    This is direct competition which is a breach of the narrow and geographically limited non-compete provisions of the NDA and the LLC Agreement.

122.    Cappiello's breach of the NDA and the LLC Agreement threatens immediate and irreparable harm to PrimePay.

123.    PrimePay has no adequate remedy at law to completely remedy its potential losses and will continue to suffer substantial and immediate irreparable harm unless Cappiello is enjoined as requested below.

124.    Greater injury will be inflicted on PrimePay by the denial of the relief requested herein than will be inflicted on Defendant Cappiello by the granting of this relief.

## COUNT III
## BREACH OF CONTRACT (CONFIDENTIALITY TERMS)
### (Against Defendant Cappiello)

125.     The facts alleged in the preceding Paragraphs 1-124 are incorporated herein as if set forth in full.

126.     Pursuant to the NDA, Cappiello was required to return to PrimePay all "Confidential Information in the form of documents, disks or other computer media, correspondence (including e-mails), files, notes, memoranda, training manuals, handbooks, database, computer files or other materials in [his] possession or under [his] control that may contain or be derived from ideas, concepts, Inventions, or trade secrets and other Confidential Information as set forth in this [NDA], or that are connected with or derived from [his] services to or employment with PrimePay or that otherwise relate to PrimePay's business."

127.     Pursuant to the LLC Agreement Cappiello was required to "maintain the secrecy and confidentiality of [PrimePay's] Confidential Information" and he was prohibited from "divulge[ing]," "furnishing" or "mak[ing] accessible to anyone . . . Confidential Information." He was also prohibited from taking any action that "would reduce the value of the Confidential Information to the Company."

128.     PrimePay's investigation to date has revealed that Cappiello has saved at least twenty thousand (20,000) documents belonging to PrimePay, and containing its Trade Secrets and Confidential Information, to his personal devices.  PrimePay's investigation to date has also revealed that Cappiello uploaded some of these Trade Secrets and Confidential Information onto Beyond's computer system.

129.     Upon information and belief, Cappiello is using this information to directly compete with PrimePay for the benefit of Beyond.

130.     Cappiello's breach of the NDA and the LLC Agreement threatens immediate and irreparable harm to PrimePay.

131.     PrimePay has no adequate remedy at law to completely remedy its potential losses and will continue to suffer substantial and immediate irreparable harm unless Cappiello is enjoined as requested below.

132.     Greater injury will be inflicted on PrimePay by the denial of the relief requested herein than will be inflicted on Cappiello by the granting of this relief and forcing him to abide by the Agreements.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE**
**PENNSYLVANIA UNIFORM TRADE SECRETS ACT**
**(Against Defendants Cappiello and Beyond)**

133.     The facts alleged in the preceding Paragraphs 1-132 are incorporated herein as if set forth in full.

134.     As a former employee of PrimePay, Defendant Cappiello had access to PrimePay's Trade Secrets and Confidential Information.

135.     Defendant Cappiello had a duty to maintain the secrecy of PrimePay's Trade Secrets and Confidential Information.

136.     Upon information and belief, from at least November 2019 through July 9, 2020, Defendant Cappiello misappropriated and transmitted, communicated, disclosed, and /or utilized PrimePay's Trade Secrets and Confidential Information for his benefit, through improper means and without the consent of PrimePay.

137.     The Trade Secrets and Confidential Information, as described at length above, are critical to the success of PrimePay's business.

138.    PrimePay exercises reasonable efforts to maintain the secrecy of the Trade Secrets and Confidential Information.

139.    Cappiello's acquisition of PrimePay's confidential and proprietary business data (the Stolen Proprietary Information) from its computers by improper means constitutes a misappropriation of PrimePay's Trade Secrets.

140.    Defendant Cappiello's downloading of PrimePay's documents (the Stolen Proprietary Information) to his Hard Drive constitutes a misappropriation of PrimePay's Trade Secrets.

141.    Defendant Cappiello's viewing of the Accessed Documents (which are a portion of the Stolen Proprietary Information) after his termination by PrimePay constitutes a misappropriation of PrimePay's Trade Secrets.

142.    Defendant Beyond's acquisition of the Uploaded Documents (which are a portion of the Stolen Proprietary Information) occurred with Beyond having full knowledge of Cappiello's prior employment with PrimePay.

143.    Defendant Beyond's acquisition of the Uploaded Documents constitutes a misappropriation of PrimePay's Trade Secrets..

144.    By misappropriating, retaining, and/or misusing PrimePay's Trade Secrets and Confidential Information, Defendants Cappiello and Beyond have violated the Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5301 *et seq* ("PUTSA").

145.    The actions of Defendants Cappiello and Beyond were willful and malicious.

146.    Defendants' actual and/or threatened misappropriation of PrimePay's Trade Secrets and Confidential Information has and will continue to cause irreparable harm to PrimePay unless enjoined.

147.    Under common law and the PUTSA, PrimePay is entitled to injunctive relief to prevent the breach and/or any further disclosure of this confidential and proprietary information.

148.    An award of exemplary damages pursuant to the PUTSA is necessary because the Defendants willfully misappropriated PrimePay's Trade Secrets and Confidential Information.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS (DELAWARE LAW)
### (Against Defendant Cappiello)

149.    The facts alleged in the preceding Paragraphs 1-148 are incorporated herein as if set forth in full.

150.    While Cappiello was employed by PrimePay, he had access to PrimePay's Trade Secrets and Confidential Information.

151.    The LLC Agreement protects PrimePay's Trade Secrets and Confidential Information.

152.    Cappiello has admitted to: (a) placing the Stolen Proprietary Information on his Hard Drive, (b) viewing the Accessed Documents (which are a portion of the Stolen Proprietary Information) after his termination by PrimePay, and (c) placing the Uploaded Documents on Beyond's computer system, all of which constitute misappropriations of PrimePay's Trade Secrets.

153.    The disclosure and use of PrimePay's Trade Secrets will damage PrimePay in a manner in which money damages will not provide adequate relief.

## COUNT VI
## PROCURING INFORMATION BY IMPROPER MEANS
### (Against Defendant Cappiello)

154.    The facts alleged in the preceding Paragraphs 1-153 are incorporated herein as if set forth in full.

155.    As set forth above, Defendant Cappiello, for the purpose of advancing his own interests, procured by improper means PrimePay's Trade Secrets and Confidential Information.

156.    Cappiello's actions with respect to his possession, disclosure, and use of PrimePay's Trade Secrets and Confidential Information has harmed PrimePay.

157.    Cappiello has acted willfully, maliciously, and with reckless disregard toward PrimePay's rights.

158.    Cappiello is therefore liable to PrimePay for the harm caused by his possession, disclosure, and/or use of PrimePay's Trade Secrets and Confidential Information.

159.    Defendant, through his unlawful conduct with respect to retaining PrimePay's Trade Secrets and Confidential Information by improper means, has directly and proximately caused PrimePay to suffer past and ongoing incalculable financial losses, imminent and irreparable harm, loss of the confidentiality of the Trade Secrets and Confidential Information, and other damages in an amount to be determined at trial.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(Against Defendant Beyond)**

160.    The facts alleged in the preceding Paragraphs 1-159 are incorporated herein as if set forth in full.

161.    Defendant Beyond has tortiously interfered with PrimePay's contractual relationship with Cappiello.

162.    It is without dispute that Cappiello executed the NDA and the LLC Agreement.

163.    Cappiello continues to be bound by the NDA and the LLC Agreement, which are enforceable contracts between Cappiello and PrimePay.

- 30 -

164.    PrimePay provided the relevant provisions of the NDA and the LLC Agreement to Defendant Beyond after it learned of Cappiello's employment with Beyond.

165.    As a result, Beyond was aware of the specific non-compete, non-solicitation, and confidentiality restrictions within these agreements.

166.    Despite this knowledge, Beyond continued to employ Cappiello in a position that, upon information and belief, would require him to directly compete with PrimePay.

167.    Upon information and belief, Cappiello's plan to use PrimePay's Confidential Information and Trade Secrets to launch a comparable payroll business unit at Beyond were both known and supported by Beyond.

168.    As a direct and proximate result of Defendant Beyond's intentional interference, PrimePay has suffered and/or will suffer severe and serious economic injury and damage to its business operations and development, including, but not limited, to lost profits.

169.    Defendant Beyond's actions were willful and malicious and undertaken with reckless indifference to PrimePay's rights.

## JURY DEMAND

Plaintiff PrimePay hereby requests and demands trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, PrimePay prays for an Order from this Court:

a.      Declaring that Cappiello has breached the NDA and the LLC Agreement;

b.      Declaring that Beyond has interfered with Plaintiff's contractual relations;

c.      Declaring that Defendants have misappropriated PrimePay's trade secrets;

d.      Ordering the return of PrimePay's trade secrets and other proprietary and confidential information, whether maintained electronically or by hard copy, and the destruction of all copies of such trade secrets and other confidential and proprietary information in Defendants' possession, and enjoining any and all future use of PrimePay's trade secrets and other confidential and proprietary information by Defendants;

e.      Ordering that Defendant Cappiello be enjoined from working in a role that directly competes with PrimePay during the non-compete period;

f.      Ordering that Defendant Cappiello be enjoined from soliciting PrimePay employees during the non-compete period;

g.      Ordering that Defendant Cappiello be enjoined from soliciting PrimePay clients during the non-compete period;

h.      Ordering that Defendant Cappiello be enjoined from disclosing PrimePay's confidential and proprietary information and trade secrets to any third-party, including, but not limited to, Defendant Beyond;

- 32 -

i.  Ordering that Defendants be enjoined from using or possessing any of PrimePay's confidential information or trade secrets, except to preserve them for purposes related to this lawsuit;

j.  Ordering Defendants to account to Plaintiff for all gains, profits, and other advantages unjustly obtained by Defendants as a result of Defendants' wrongful acts;

k.  Ordering Defendants to account to Plaintiff for a reasonable royalty for Defendants misappropriation of trade secrets;

l.  Ordering Defendant to provide an accounting to Plaintiff of any and all trade secrets and other confidential and proprietary information that has been used or disclosed to any person or entity;

m.  Awarding exemplary damages as authorized by the Pennsylvania Uniform Trade Secrets Act for the willful and malicious misappropriation of Plaintiff's trade secrets;

n.  Directing Defendants to pay all damages sustained by Plaintiffs arising from the foregoing misconduct, including actual damages, compensatory damages, punitive damages, pre-judgment interest, and post-judgment interest;

o.  Directing Defendants to pay the costs of these proceedings; and

p.      Affording such other and further relief, including attorneys' fees and costs, as the Court deems appropriate.

Dated: September 4, 2020

SAUL EWING ARNSTEIN & LEHR LLP

By:   */dariuscgambino/*

DARIUS C. GAMBINO, ESQ.
PATRICK M. HROMISIN, ESQ.
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
Tel: (215) 972-7173
Fax: (215) 972-7725
Darius.Gambino@saul.com
Patrick.Hromisin@saul.com

RUTH A. RAULS, ESQUIRE
Motion for Admission Pro Hac Vice to be Filed
650 College Road East, Suite 4000
Princeton, New Jersey  08540
Tel: (609) 452-5049
Fax: (609) 452-3122
Ruth.Rauls@saul.com

LELIA F. PARKER, ESQUIRE
Motion for Admission Pro Hac Vice to be Filed
500 East Pratt Street, 9th Floor
Baltimore, Maryland  21202
Tel: (410) 332-8755
Lelia.Parker@saul.com

*Attorneys for Plaintiff PrimePay, LLC.*